BARRY J. PORTMAN
Federal Public Defender
HILARY A. FOX
Assistant Federal Public Defender
555 12th Street, Suite 650
Oakland, CA 94607
Tel: (510) 637-3500

Counsel for Defendant RAMOS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,           )<br>                                                          )<br>                 Plaintiff,                       )<br>                                                          )<br>         v.                                            )<br>                                                          )<br>MARTIN RAMOS URIAS,              )<br>                                                          )<br>                 Defendant.                     )<br>_____) | No. CR 07-00567-SBA<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>Date: February 26, 2008<br>Time: 10:00 a.m.<br>Court: Hon. Saundra Brown Armstrong<br>            U.S. District Court |

    Defendant Martin Ramos Urias has pleaded guilty to one count of illegal re-entry in violation of 8 U.S.C. § 1326 and he is scheduled to appear for sentencing on Tuesday, February 26, 2008, at 10:00 a.m. There is no dispute about the Guideline calculations in this case, nor is there disagreement between the parties and Probation Office regarding the appropriate sentence. Specifically, in a written plea agreement pursuant to Rule 11(c)(1)(C) of the Rules of Criminal Procedure, the parties have agreed upon the calculation of Mr. Ramos' guidelines and have agreed that a mid-range sentence is appropriate in this case. *See* Plea Agreement at ¶¶ 7, 8, & 13. The Probation Office has now prepared an Amended Presentence Report which confirms that the parties' sentencing calculations are accurate, finds that Mr. Ramos falls in Criminal History Category V, and appears to endorse either a low-end (46 months) or a mid-range sentence (50

months.[1]  *See* PSR at ¶ 4 (confirming accuracy of guideline calculations contained in plea agreement).  Pursuant to the plea agreement, the parties are recommending the Court impose a sentence of 50 months.

Mr. Ramos therefore submits this brief memorandum to provide the Court with some additional information regarding the defendant's personal history.

RELEVANT FACTS

Mr. Ramos was brought to the United States by his parents in 1979, when he was five years old.  PSR at ¶41.  He later acquired legal status as a lawful permanent resident.[2]  Mr. Ramos attended school through the tenth grade before dropping out and entering the workforce. A few years after leaving school, he met his future wife, Sonia Mucio, and moved in with her.  They had two children together and owned their own home.  During this time, Mr. Ramos recalls, he was a responsible father who worked, paid his taxes, kept up insurance for his family and, apart from some involvement with marijuana, tried to be a good citizen.  All this changed, he says, when he began using methamphetamine.  PSR at ¶ 46 (Mr. Ramos began using methamphetamine when he was 25 years old).

As a result of his use of methamphetamine, Mr. Ramos suffered several convictions and his relationship with his wife deteriorated. PSR at ¶ 42.  He had to move out of their home.  Unable to continue meeting the mortgage payments, he and his wife had to sell their home.  His family reports that the separation from his wife was extremely painful for Mr. Ramos.  In 2003, he was convicted of possession of drugs for sale, in violation of §11378 of the California Health and Safety Code.  PSR at ¶ 30.  This offense constitutes an aggravated felony for immigration purposes, *United States v.*

---

[1] The PSR at one point in the recommendation section mentions "a term of 46 months," but elsewhere recommends a sentence of "50 months."  Defendant was not able to confirm with the Probation Office whether the final recommendation is for 46 or 50 months.

[2] Mr. Ramos was unaware of the date that he acquired lawful permanent resident status but his immigration file indicates that it was on December 8, 1989.

DEF'S SENTENCING MEMO                      - 2 -
*U.S. v. Ramos Urias*, CR 07-00567-SBA

1  *Valle-Montalbo*, 474 F.3d 1197 (9th Cir. 2006), and jeopardized Mr. Ramos' lawful permanent
2  resident status.  No deportation proceedings were instituted at that time.  It is not clear whether Mr.
3  Ramos was aware of the immigration consequences of that conviction because, at the change of plea
4  hearing in that case, the court assumed that Mr. Ramos was a citizen and thus failed to inform him of
5  the immigration consequences of the conviction.  *See* Exhibit. A (excerpt from transcript at change
6  of plea).  He was placed on probation.
7        The following year, Mr. Ramos was arrested for unlawful possession of a weapon.  PSR at ¶
8  31.  Although the gun was found in his father's bedroom (according to Mr. Ramos and his parents),
9  he was facing both drug and gun charges, and agreed to plead *nolo contendere* to the gun charge with
10 the understanding that he would receive a felony conviction but only serve one day in custody.  PSR
11 at ¶31.  As a result of this arrest and conviction, however, probation was revoked on his earlier case.
12 PSR at ¶¶ 30, 31.  Mr. Ramos was sentenced to serve 16 months in custody for the violation.  PSR at
13 ¶ 30.
14       It was during this period of incarceration in 2006 that Mr. Ramos came to the attention of
15 immigration authorities.  By this time, he was subject to deportation not only because of his 2004
16 drug conviction but also on the basis of his subsequent conviction for firearms possession.  Thus
17 instead of being released upon completion of his sentence, Mr. Ramos was deported to Mexico in
18 July 2006.
19       Having grown up his whole life in the United States, Mr. Ramos was unprepared for life in
20 Mexico.  He tried to make it work but eventually, in 2007, he returned to the United States to see his
21 children.  On February 2, 2007, shortly after he had returned, he was detained during a traffic stop.
22 PSR at ¶ 38.  His probation for the gun case was modified to add 60 days custody, and he was
23 brought to federal court to face prosecution for illegal re-entry.  PSR at ¶ 31.
24       It is possible that, if he had obtained effective assistance from an immigration attorney at the
25 time of his arrest in 2003 on methamphetamine charges, Mr. Ramos might have been able to avoid
26 losing his lawful permanent resident status.  Because he now has sustained two additional

1  convictions and has re-entered the country unlawfully, Mr. Ramos no longer has the option to regain
2  his status.  Instead, he will be deported to Mexico upon the completion of his sentence in this case.
3  Mr. Ramos' family is understandably saddened by his impending deportation.  Attached as Exhibit B
4  are numerous letters from Mr. Ramos' family and friends describing his positive qualities as a hard-
5  working man, a good father, and a much-loved son and brother.  Mr. Ramos himself understands that
6  he has brought these problems upon himself through his use of drugs and his criminal conduct.
7  Attached as Exhibit C is his letter to the Court, and Exhibit D includes the verifications of his
8  participation in anger management and substance abuse programs while in pretrial detention.

## CONCLUSION

10      The sentence the Court imposes upon Mr. Ramos is only one part of the punishment he faces.
11  The more long-lasting punishment will be his deportation and exclusion from this country, which has
12  been his home for as long as he can remember, and from his children and his family.  Mr. Ramos is
13  prepared to make the best of his situation.  He submits these factors for the Court's consideration,
14  and respectfully requests that the Court adopt the sentence of 50 months' custody set forth in the
15  parties' plea agreement.

17  Dated: February 20, 2008

18                                Respectfully submitted,

19                                BARRY J. PORTMAN
                                Federal Public Defender

20

21                                 /S/

22                                HILARY A. FOX
                                Assistant Federal Public Defender